IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Peacock Automotive, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 9:20-1303-BHH |
| v. ) | |
| ) | **ORDER** |
| Granite State Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon Plaintiff Peacock Automotive, LLC's ("Plaintiff" or "Peacock") motion for partial summary judgment and Defendant Granite State Insurance Company's ("Defendant" or "Granite State") cross-motion for summary judgment. For the reasons set forth herein, the Court denies Plaintiff's motion for partial summary judgment and grants Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff operates a number of businesses in Jasper County, South Carolina, and Plaintiff purchased an insurance policy (No. 02-LX-062648260-1, "the policy") from Defendant to insure its commercial properties. Included in the policy is certain "business income and extra expense coverage." In particular, relevant to this lawsuit is the following "Civil Authority" provision:

> We shall pay for the actual loss of **your business income** and **extra expense** caused by or resulting from action by a civil authority that prohibits access to the premises described in the Declarations due to direct physical loss of or damage to property, other than at the premises described in the Declarations, caused by or resulting from a **covered cause of loss**. . . .

(ECF No. 20-2 at 1 (emphasis in original).)

In its complaint, Plaintiff alleges that Executive Order 2019-18[1] forced it to evacuate its businesses by noon on September 2, 2019, due to the approaching Category 5 Hurricane Dorian.  (ECF No. 1-1 ¶ 3.)  Plaintiff further asserts that "[t]he Executive Order was based on the severe property damage loss evidenced in the Bahamas and along the coast of the United States, and the continued threat of Hurricane Dorian to the east coast of the United States." (*Id.*)  Plaintiff claims that the Executive Order "was also based upon the significant potential threat of property damage in Jasper County, South Carolina." (*Id.*)

Plaintiff asserts that the policy was in effect at the time of the mandatory evacuation and that it filed a claim for business interruption loss with Defendant in early September. Plaintiff further asserts that it provided proof to Defendant that the Evacuation Order was based in part on damage to property other than at the dealerships, and Plaintiff contends that Defendant failed to timely investigate the claim and refused to pay benefits owed without reasonable cause. (ECF No. 20-1 at 2.) Plaintiff's complaint alleges claims against Defendant for breach of contract and bad faith, and in its motion for partial summary judgment, Plaintiff seeks an order finding in its favor as to liability on both of its claims.  In its cross-motion for summary judgment, Defendant asserts that there is no coverage under the civil authority provision as a matter of law and that it did not act in bad faith and acted reasonably in denying the claim.

## **STANDARD OF REVIEW**

A court shall grant summary judgment if a party shows that there is no genuine

---

[1] Plaintiff's complaint references Executive Order 2019-**18**, but based on the parties' motions and other briefings, it appears that the Executive Order at issue is 2019-**28**, which mandated the evacuation of Jasper County and other coastal counties effective at noon on September 2, 2019.

2

dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## **DISCUSSION**

In its motion for partial summary judgment, Plaintiff first seeks judgment as to liability on its breach of contract claim, asserting that there is no genuine issue of material fact that (1) a binding contract existed between the parties; (2) Governor McMaster's Executive Order mandating evacuation of Plaintiff's businesses satisfies the unambiguous insuring language; and (3) Defendant breached the contract by denying Plaintiff's claim. In support, Plaintiff relies on a recent opinion from Judge Lydon, *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520 (D.S.C. 2020), which cites favorably the case of *Assurance Co. of Am. v. BBB Serv. Co. Inc.*, 593 S.E.2d 7 (Ga. Ct. App. 2003). According to Plaintiff, the instant case is analogous to *Assurance*, and Plaintiff asserts that the civil authority provision is met here, like in *Assurance*, based on a letter dated January 6, 2020, from Kim Stenson, the Director of the South Carolina Emergency Management Division, which states: "As a result of the severe property loss evidenced in the Bahamas as Hurricane Dorian continues to threaten the east coast of the United States, the

3

significant potential threat to South Carolina, and based on the recommendations of local, state and federal officials, Governor McMaster determined that it was necessary to evacuate portions of eight coastal counties, including Jasper County, on September 2nd." (ECF No. 20-4 at 1.)

Plaintiff also seeks summary judgment as to liability on its bad faith claim, asserting that Defendant failed to send a denial letter with the reasons for denial and failed to provide a coverage response for more than a month after it received Director Stenson's letter, thereby forcing Plaintiff to file suit.

In response to Plaintiff's motion, by way of cross-motion for summary judgment, Defendant first contends that Director Stenson's letter is hearsay and is not admissible evidence to support Plaintiff's motion. Next, Defendant asserts that Plaintiff's claim is not covered by the policy, because, contrary to Plaintiff's assertion, the policy contains a territorial restriction, and damage in the Bahamas falls outside of the restriction. Additionally, Defendant asserts that there is no "nexus" between Governor McMaster's Executive Order and the existing damage to property in the Bahamas. In support of its argument, Defendant relies on *Kelaher* and several cases cited favorably within Judge Lydon's opinion.

Next, as to Plaintiff's bad faith claim, Defendant asserts that to the extent the claim is for improper claims practices, South Carolina law does not recognize such a claim. Also, to the extent Plaintiff properly asserts a bad faith claim, Defendant contends that it did not act in bad faith because there was no coverage under the policy, and, alternatively, even if the Court were to somehow find coverage, Defendant asserts that it did not act unreasonably in denying Plaintiff's claim.

4

In response to Defendant's motion for summary judgment, Plaintiff argues that Defendant's interpretation of the policy's territorial restriction is strained and unreasonable. Plaintiff argues that the "loss" referenced in the Business Income and Extra Expense Coverage Form is the "loss of your business income," which is distinct from "direct physical loss of or damage to property other than at the premises." In other words, Plaintiff asserts that it is not seeking coverage for property damage in the Bahamas but instead for the "loss" of its business income, suffered as a result of the evacuation and clearly occurring within the coverage territory.

In addition, Plaintiff asserts that Defendant cannot now introduce a new basis for denial by claiming that the physical damage, rather than the business income loss, must have occurred within the coverage territory. Moreover, Plaintiff asserts that it has shown a sufficient nexus between the physical damage caused by Hurricane Dorian and the Executive Order, pointing to Director Stenson's letter. With respect to Director Stenson's letter, Plaintiff asserts that it may be considered for purposes of summary judgment because (1) the letter is subject to a hearsay exception as a public record, *see* Fed. R. Evid. 803(8); and (2) Rule 56 of the Federal Rules of Civil Procedure no longer requires evidence to be presented in admissible form and instead requires a party to identify facts that *could be* presented in admissible form. In short, Plaintiff asserts that the facts in Director Stenson's letter "can be reduced to admissible form at trial through his testimony." (ECF No. 31 at 10.)

Lastly, with respect to its bad faith claim, Plaintiff contends that there is prima facie evidence of coverage and that Defendant failed to investigate and process Plaintiff's claim in good faith. Plaintiff states that Defendant did not send a denial letter under January 23,

2020, although the letter is dated December 9, 2020,[2] and Plaintiff further asserts that the letter contains several misstatements and shows a lack of investigation.

In its reply brief, Defendant asserts that the Stenson letter does not fall within the public records exception to hearsay, and that, regardless, Stenson cannot testify as to Governor McMaster's reason for issuing Executive Order 2019-28 because only Governor McMaster can speak to that issue. Thus, Defendant argues that any dispute over the accuracy, reliability, and/or admissibility of Stenson's letter is not a dispute involving a *material* fact.

Next, Defendant asserts that Executive Order was not issued "due to" any damage in the Bahamas, and that Judge Lydon's opinion in *Kehalar*, although not binding precedent, shows that "some link" between a civil authority order and property damage must be a "close causal link," which is not present in this case. Defendant also points out that it is not limited to the coverage defenses in its denial letter and that the doctrines of waiver and estoppel cannot be used to extend coverage where it does not otherwise exist.

Next, with regard to Plaintiff's reliance on property damage in the Bahamas as a basis for coverage, Defendant asserts that it was first made aware of this argument on or around February 6, 2020, when it received a letter from Plaintiff's counsel setting forth this argument and including Stenson's letter as an attachment. According to Defendant, it was still investigating these issues less than one month later when Plaintiff filed suit. In addition, Defendant again asserts that the territorial restriction unequivocally bars coverage because

---

[2] Although Plaintiff claims in its motion for partial summary judgment that Defendant never sent a denial letter, the parties now appear to have stipulated that a denial letter was sent on or around January 23, 2020. (*See* ECF No. 32 at 6 n.4.)

the "cause of loss" that must be covered is the purported property damage that triggers the evacuation and not the evacuation itself.  Finally, Defendant asserts that Plaintiff has not offered any evidence of bad faith.

The Court will examine the parties' arguments below.

As an initial matter, the Court is not convinced by Defendant's interpretation of the policy's "coverage territory" provision.  As previously set forth, the policy includes the following "Civil Authority" provision:

> We shall pay for the actual loss of **your business income** and **extra expense** caused by or resulting from action by a civil authority that prohibits access to the premises described in the Declarations due to direct physical loss of or damage to property, other than at the premises described in the Declarations, caused by or resulting from a **covered cause of loss**. . . .

(ECF No. 20-2 at 1 (emphasis in original).)  Under the General Conditions section of the policy, a section with the heading "Policy Period, Coverage Territory" provides that: "Under this Policy: 1. **We** cover loss or damage commencing: . . . b. Within the coverage territory," and the coverage territory is defined as the United States, including its territories and possessions, Puerto Rico, and Canada.  (*Id.* at 4 (emphasis in original).)

Defendant argues that the coverage territory restriction unequivocally bars coverage because the "cause of loss" that must be covered is the purported property damage that triggers the evacuation and not the evacuation itself.  However, as Plaintiff points out, the coverage territory provision does not refer to the defined term "covered cause of loss." Rather, it simply says, "We cover *loss* or damage commencing . . . [w]ithin the coverage territory."  (*Id.* at 4.)  Defendant agrees with Plaintiff that the phrase "[w]e cover loss or damage" refers to Plaintiff's purported loss of business income.  (ECF No. 32 at 8.)

7

However, Defendant argues that "Plaintiff is incorrect that the territorial restrictions cannot be enforced so long as the 'loss' is within the coverage area, because the insurable interest for these Jasper County businesses will presumably always cause a "loss" in Jasper County." (*Id.*)  However, as Plaintiff points out, the plain language of the coverage territory provision does not require that the "cause of loss," "physical loss," "damage to property," or "covered cause of loss" occur within the coverage territory.  It simply says "loss or damage," and the parties agree that the loss at issue is Plaintiff's loss of business income.  If Defendant wanted to limit the policy to require that the "cause of loss," "physical loss, "damage to property," or "covered cause of loss" commence within the coverage territory, it could have done so.  Accordingly, the Court does not find that Defendant is entitled to summary judgment on the basis of the policy's coverage territory provision.

Next, however, the Court *is* convinced by Defendant's argument that there must be a *causal link* between the civil authority order and property loss or damage other than at the covered premises, because the plain language of the policy clearly requires that the "action by a civil authority" be "**due to** direct physical loss of or damage to property, other than at the premises . . . ."  (ECF No. 20-2 at 1 (emphasis added).)  The Court is also convinced, for the reasons set forth below, that there is not sufficient evidence of a causal link between Governor McMaster's Executive Order and property damage in the Bahamas.

In *Kelaher*, the insured, a South Carolina law firm that allegedly lost business income after the Governor of South Carolina ordered a mandatory evacuation, sought coverage pursuant to a civil authority provision in its business interruption insurance policy.  The policy at issue required that the order of civil authority be "*because of* damage or destruction of property adjacent to the described premises by the perils insured against."

8

440 F. Supp. 3d at 526 (emphasis added).  In evaluating the phrase "because of," Judge Lydon considered a number of cases involving the same phrase and determined that the phrase "unambiguously requires a link between the issuance of the civil authority order and the property damage." *Id.* at 528.

Here, Plaintiff argues that there simply must be "some link" between the action by a civil authority and the physical loss of or damage to other property, but after a review of the relevant case law, the Court agrees with Defendant that there must be a *causal* link or nexus between the two.  As cited by Judge Lydon in *Kelaher*, in *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, the Fifth Circuit Court of Appeals found that the insured failed to demonstrate a nexus between any prior property damage and the governor of Louisiana's mandatory evacuation order related to Hurricane Gustav.  636 F.3d 683 (5th Cir. 2011). The court noted that the general rule that "[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." *Id.* at 686-87.  Although the policy at issue in *Dickie Brennan* did not address the proximity issue, the court found that "the policy requires proof of a causal link between prior damage and civil authority action." *Id*. at 687.  Because the civil authority action at issue in *Dickie Brennan* did not mention any property damage in the Carribean, and listed only possible future storm surge, high winds, and flooding based on the hurricane's predicted path as reasons for evacuation, the court found that the insured failed to demonstrate a causal link or nexus between any prior property damage and the evacuation order.  *Id*. at 685-86.  As in *Kelaher*, this Court is persuaded by the Fifth Circuit's well-reasoned analysis.  *Id.* at 686; *see also South Texas Med. Clinics, P.A. v.*

9

*CNA Fin. Corp.*, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) (finding no coverage under a civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico" in connection with Hurricane Rita); *United Airlines, Inc. v. Ins. Co. of the State of Penn.*, 439 F.3d 128, 134 (2d Cir. 2006) (finding that the interruption to United Airlines' business following the terrorist attacks on September 11, 2001, was not the "direct result" of damage to adjacent premises because the decision to halt operations was "based on fears of future attacks).

Here, Plaintiff cites *Assurance Co of Am. v. BBB Serv. Co.* in support of its argument that is has shown a nexus between the evacuation order and hurricane damage in the Bahamas, but the Court finds Plaintiff's reliance on *Assurance* unavailing. 593 S.E.2d 7 (Ga. Ct. App. 2003). In *Assurance*, the Georgia Court of Appeals affirmed the trial court's finding of coverage for lost business income due to a hurricane under a similar civil authority provision. However, in *Assurance*, the court conducted a bench trial, at which a member of the Brevard County "Policy Group" that was assembled to make emergency-weather decisions testified that "the fact that the storm had been causing damage in its path, the forecast that the storm was headed to Brevard County, and the anticipated impact of the storm if it reached Brevard County were factors that led the team to advise the Chairman of the County Commission to sign the evacuation order." *Id.* at 8. In reviewing the trial court's decision under a clearly erroneous standard, the appellate court found that the trial court's decision could not be disturbed because the record contained evidence that actual damage to property other than the insured premises was a basis for the evacuation order.

10

In *Kelaher*, Judge Lydon found the facts of *Assurance* distinguishable, noting that the Executive Order at issue in *Kelaher* "does not reference any 'damage or destruction of property,' let alone 'damage or destruction of property adjacent to the described premises." 440 F. Supp. 3d at 531.  Rather, in *Kelaher*, the Executive Order "focused on the potential, future, or predicted impacts on life and property."  *Id.*  Such is the case here.

Specifically, Executive Order 2019-28 provides as follows:

> **WHEREAS,** the National Hurricane Center has determined from the latest forecast models that Hurricane Dorian, which is currently a category 5 hurricane, may impact the State of South Carolina and other areas in the southeastern region of the United States; and
>
> **WHEREAS,** the undersigned has been advised that Hurricane Dorian, including the associated wind, heavy rain, flash flooding, and other severe weather, represents a significant threat to the State of South Carolina, which requires that the State take timely precautions to protect and preserve property, critical infrastructure, communities, and the general safety and welfare of the people of this States; and
>
> **WHEREAS,** due to the potential impact of Hurricane Dorian, the undersigned issued Executive Order No. 2019-26 on August 31, 2019, declaring that a State of Emergency exists throughout the State of South Carolina and activating the South Carolina Emergency Operations Plan to provide for the health, safety, and welfare of residents and visitors located in the threatened areas; and
>
> **WHEREAS,** as the elected Chief Executive of the State, the undersigned is authorized pursuant to section 25-1-440 of the South Carolina Code of Laws, as amended, to direct and compel the evacuation of all or part of the populace from any stricken or threatened area if such action is considered necessary for the preservation of life or other emergency mitigation, response, or recovery; and
>
> **WHEREAS,** upon consultation with the South Carolina Emergency Management Division ("EMD") and other authorities, the undersigned has determined that an evacuation is necessary for the preservation of life in and surrounding the threatened areas or for other emergency mitigation, response, or recovery efforts.

. . .

(ECF No. 20-3 at 1.)  Importantly, nowhere does Governor McMaster's Executive Order mention earlier property loss or damage in the Bahamas as a basis for his decision. Rather, similar to *Kelaher*, *Dickie Brennan*, and *South Texas Medical Clinics*, the action of civil authority at issue here focuses only on *the potential threat* to lives and property and does not appear to be "due to direct physical loss of or damage to property, other than at the premises."

Plaintiff points to Stenson's letter as evidence that "a ground for issuing the Executive Order was direct physical loss or damage to property other than the insured premises." (ECF No. 20-1 at 4.)  As previously set forth, Stenson's letter states the following: "As a result of the severe property loss evidenced in the Bahamas as Hurricane Dorian continues to threaten the east coast of the United States, the significant potential threat to South Carolina, and based on the recommendations of local, state and federal officials, Governor McMaster determined that it was necessary to evacuate portions of eight coastal counties, including Jasper County, on September 2nd."  (ECF No. 20-4 at 1.)

Ultimately, however, the Court agrees with Defendant that Stenson's letter is hearsay and that it does not fall within the public records exception to hearsay under Rule 803(8) of the Federal Rules of Evidence.  Stated plainly, the letter does not set out the office's activities, include "a matter observed while under a legal duty to report," or contain "factual findings from a legally authorized investigation.  *See* Fed. R. Evid. 803(8)(A)(ii) and (iii).  Moreover, the letter was not timely written and appears to have been prepared in contemplation of litigation, leading to a finding of untrustworthiness.

In addition, although Rule 56 no longer requires evidence to be presented in

admissible form for purposes of summary judgment and instead requires a party to identify facts that *could be* presented in admissible form, the Court finds that even if Plaintiff were to present the testimony of Director Stenson at trial, this testimony would not address a *material* fact because Director Stenson is not competent to testify as to Governor McMaster's reasons for issuing Executive Order 2019-28. *See* S.C. Code § 25-1-440 (providing that "[t]he Governor, when an emergency has been declared, as the elected Chief Executive of the States, is responsible for the safety, security, and welfare of the State . . . .") Thus, contrary to the facts in *Assurance*, where the insured presented the testimony of a member of a policy group that was assembled to make emergency-weather decisions, the applicable South Carolina law grants the Governor (and not the South Carolina Emergency Management Division) the broad emergency powers to implement emergency declarations and executive orders, and Stenson cannot testify as to the basis for *Governor McMaster's determination* that a mandatory evacuation was necessary.[3]

Based on the foregoing, the Court finds that Plaintiff has failed to point to sufficient evidence to show the required causal link or nexus between the action by a civil authority (Executive Order 2019-28) and direct physical loss of or damage to property, other than at the premises described in the Declarations (property loss or damage to property in the Bahamas). Stated plainly, Executive Order 2019-28 speaks for itself and does not mention earlier property loss or damage in the Bahamas as a basis for the mandatory evacuation. Rather, similar to *Kelaher*, *Dickie Brennan*, and *South Texas Medical Clinics*, the Executive

---

[3] As Defendant points out in its motion, only Governor McMaster can speak to his reasons for issuing the mandatory evacuation order, and there is no reason to otherwise speculate as to the Governor's reasons when the order speaks for itself and does not refer in any way to property damage in the Bahamas.

Order focuses only on the potential, future, or predicted impacts on life and property in South Carolina.  Moreover, Director Stenson is not competent to testify as to Governor McMaster's reasons for issuing Executive Order 2019-28; thus, the letter offered by Plaintiff does not create a genuine issue of material fact as to Plaintiff's claims.  Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's bad faith claim.

Likewise, the Court finds that Defendant is entitled to summary judgment on Plaintiff's bad faith claim.  When Defendant sent Plaintiff the denial letter in January, Defendant had not yet received the letter from Plaintiff's counsel with Director Stenson's letter attached.  Thus, there can be no bad faith on Defendant's part for failing to analyze the issues raised in these letters in its reservation of rights or denial letter.

Additionally, it appears that Plaintiff filed this suit less than one month after providing counsel's letter and Stenson's letter to Defendant, and Plaintiff has not shown that Defendant was taking an unreasonable amount of time to review the matter prior to Plaintiff filing suit.  Overall, the Court finds that Plaintiff has failed to point to evidence sufficient to create a genuine issue of material fact as to Defendant's alleged bad faith.  As explained above, Defendant had a reasonable basis to deny coverage.  Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's bad faith claim.

## **CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's motion for partial summary judgment (ECF No. 20) and grants Defendant's motion for summary judgment (ECF No. 23).

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 15, 2021
Charleston, South Carolina